```
 1        IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2
   _____
 3
   UNITED STATES OF AMERICA
 4
                  Plaintiff
 5
          vs.      Criminal Action No. 05-03E
 6
   MICHAEL SMITH
 7
                  Defendant
 8 _____

 9                PROCEEDINGS
10
         Transcript of Sentence commencing on Monday,
11  August 8, 2005, United States District Court, Erie,
    Pennsylvania, before Honorable Maurice B. Cohill, Jr.
12  District Judge.

13  APPEARANCES:

14  For the Government:     US Attorney's Office
                    By:  Christian Trabold, Esq.
15
    For the Defendant:     Federal Public Defender
16                  By:  Thomas Patton, Esq.

17           Reported by:
              Michael D. Powers, RMR
18             Official Court Reporter
             Room 5335 USPO & Courthouse
19            Pittsburgh, Pennsylvania 15219
                (412) 208-7572
20
```

21

22  Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

23

24

25

2

1            P R O C E E D I N G S

2  (Court convened on Monday, August 8th, 2005, at 10:00 a.m.)

3         THE COURT:  Good morning.  Be seated, please.  I

4  think I got a microphone around here somewhere.

5         You want to turn that on, Nancy?  I think it's

6  working.  Can you hear me all right?

7         MR. PATTON:  Yes, sir.

8         MR. TRABOLD:  Yes, Your Honor.

9         THE COURT:  This is the time set for sentencing of

10  Michael Smith.

11         And we note that Mr. Smith and Mr. Patton, his

12  attorney, have signed the notice indicating they've reviewed

13  and -- received and reviewed the presentence report.  We'll

14  make that report part of the record under seal.  If an appeal

15   should be taken, of course counsel will be permitted access

16   to that report.

17            There has been no information given to the Court

18   which was withheld from the defendant.

19            In the wake of the recent decision by United

20   States -- by the United States Supreme Court in United States

21   against Booker, the Sentencing Guidelines are now advisory

22   only, but we are still obligated to consult those guidelines

23   in determining an imposition of a reasonable sentence.

24            In other words, the guidelines, according to the

25   Supreme Court, now must be considered but are not binding on

                                    3

1    the Court.

2             There was an objection to the level which the

3    Probation Officer had indicated the offense level should be

4    in the original report, but counsel for Mr. Smith pointed out

5    an error in that calculation and the Probation Officer agreed

6    that there was an error.

7             I think that is the only objection which Mr. Patton

8    had filed.  Is that right, Mr. Patton?

9             MR. PATTON:  That's correct, Your Honor.  And that

10  adjusted the criminal history category.

11        THE COURT: Right. And, thus, after that,

12  Mr. Patton's objection was accepted, so to speak.

13        The offense level here is twenty-nine and the

14  criminal history category is Roman numeral V. And, thus, the

15  applicable guideline range is eighty-four to one hundred and

16  five months of imprisonment, supervised release of two to

17  three years at Count 1, three to five years at Count 2, a

18  fine in the range of $10,000.00 to $100,000.00 and a special

19  assessment of $200.00.

20        At this time, Mr. Patton, is there anything you

21  wish to say or introduce any additional testimony on behalf

22  of your client?

23        MR. PATTON: Your Honor, I would like to point out,

24  I believe you had stated that the total offense level was

25  twenty-nine. I believe that should be a total offense level

4

1  of twenty-three with a criminal history category of five.

2        You had the correct guideline range of eighty-four

3  to a hundred and five months.

4          THE COURT:  Let me just check the --

5          THE PROBATION OFFICER:  Your Honor, may I approach?

6          THE COURT:  Sure.  I think I have it here.  Yes.

7   Well, okay.  Now, wait a minute.

8          The original was an offense level of twenty-three

9   and a criminal history category of Roman numeral VI.  And

10  then after the objection was filed, the appropriate level

11  should be reduced -- well, the criminal history points should

12  be reduced by one and, thus, the total criminal history

13  points are twelve.

14          This means a criminal history category of Roman

15  numeral V and this reduces the advisory guideline to

16  eighty-four to a hundred and five.

17          You agree with that, Mr. Patton?

18          MR. PATTON:  Yes, sir.

19          THE COURT:  Okay.

20          MR. PATTON:  Your Honor, we don't have --

21          THE COURT:  Excuse me one minute.

22          MR. PATTON:  Sure.

23          THE COURT:  Okay.  I got the range right.  The

24  offense level is what now?

25          MR. PATTON:  Twenty-three.

5

1       THE COURT: Twenty-three? You agree with that,

2  Mr. Conde?

3       THE PROBATION OFFICER: Yes, Your Honor.

4       THE COURT: All right, Mr. Patton, proceed.

5       MR. PATTON: Your Honor, we have no evidence to

6  present, but I would like to make some comments on Mr. Smith

7  and the information that's in the presentence report.

8       And, you know, this is just an extremely sad case.

9  When you read through the family background of Mr. Smith and

10  see what this young man was put through in his childhood and

11  see that, you know, in a period of seven years -- or he was

12  put in about nine different foster homes; nine different

13  homes in a ten-year period.

14       His mother was a drug abuser and alcoholic. His

15  father was as well; although he's never met his father and no

16  one knows where his father is.

17       Mr. Smith was pulled back and forth between his

18  mother, foster homes and then back to his mother. He was

19  given back to his mother in July of 1982. And then a couple

20  years later, it's found out that his mother is back using

21  drugs along with her boyfriend.  The boyfriend is physically

22  abusing Michael, having Michael assist the boyfriend in

23  committing burglaries down in Texas and the mother being

24  subject to physical abuse from the boyfriend, as well as the

25  boyfriend, you know, abusing Michael.

6

1         And then finally Mr. Smith -- Michael was adopted

2  by the Smith family and, you know, it's just the impact that

3  that has on children is huge.  Children continue to love

4  their parents despite the horrible things that parents

5  sometimes do to their children and always seem to want to go

6  back to their parents.  And it's just devastating when a

7  child finally has to come to the realization that their

8  parents just don't love them the way the children love the

9  parents.

10         And I understand that at some point, you know,

11  Michael has to accept responsibility for what he does.  He's

12  an adult and I am not here today saying that he's excused in

13  any way from the conduct that he engaged in in robbing the

14  bank, and Michael understands that.  He is going to make a

15   statement to Your Honor.

16        And I would just ask Your Honor to consider that,

17   before Michael engaged in this bank robbery, it had seemed

18   that he had kind of gotten his life into a pretty decent

19   place with going to school.  He had a fiance.  They now have

20   a baby son and he had been working as a home healthcare aide

21   and he had made some strides to try and start leading a

22   normal life and this event occurred and now he is going to be

23   incarcerated for a long time.

24        He remains in contact with his son.  His fiance is

25   here.  They have had visits at Erie County, although it is

7

1   difficult, those visits.  They are separated by glass and

2   Mr. Smith's fiance is determined to try and keep their son in

3   contact, to the extent she can, with Michael.

4        Despite whether or not they will ultimately now

5   still end up as a couple, Miss Pena,(Sp), Mr. Smith's fiance,

6   wants her son and Michael's son to know who Michael is, and

7   that is a motivating factor for Michael now, something that

8   he -- you know, now that the son is here, it has -- gives him

9   a goal to work towards.

10       And I would ask that you recommend to the Bureau of

11  Prisons that Michael be housed at the Federal Correctional

12  Institution at McKean because that is the closest facility to

13  where Miss Pena lives and it would allow the visitations to

14  continue and would allow Michael's son the opportunity to see

15  him and visit him.

16       If he is not incarcerated in McKean, it is going to

17  be very difficult financially for Miss Pena to be able to

18  have very regular visits with Michael.

19       So, I would suggest a sentence at the lower end of

20  the guidelines is appropriate.  That would take into account

21  his prior criminal history, and a seven-year sentence is

22  longer than any other sentence he has had in State Court so

23  it underscores the penalties to again hopefully impose upon

24  Mr. Smith that he can't continue to engage in this type of

25  conduct.

8

1        And Mr. Smith would like to make a statement to

2   Your Honor.

3        THE COURT:  Mr. Smith.

4        MR. SMITH:  Good morning.  I stand here today

5   before you totally ashamed of my actions.  I never set out on

6   December 17th to hurt anyone, but I hurt so many.

7        I would like to say that I am sorry for the crime I

8   committed and you, Your Honor, for having to be here today,

9   to the employees of the bank, which I am so sorry.  I can't

10  take back what I had done, but I hope my apology will be

11  enough.

12       And finally to my family.  Everything is different

13  now because I am in jail.  I am so sorry for letting everyone

14  down.  I can never justify my actions for any reason at all.

15  I can only say I felt everything closing in on me, my

16  finances and my fiance and I had just bought a house in

17  October.  I had a new car to pay for, insurance, taxes and a

18  new roof and college.  I lost one of my jobs and it hit me

19  financially bad.  It was also Christmastime.  I just felt

20  like my life was falling apart.

21       I was on a new medication.  It really wasn't doing

22  anything to help me, and I had a baby on the way.  He doesn't

23  deserve to have a father that is in jail.  He should have

24  better than that.  He is my future now.  I will do all that I

25   can to be a good father once I am out.

9

1        I still have a future, Your Honor.  I can still

2   make a difference.  Thank you.

3        THE COURT:  Thank you, Mr. Smith.

4        Mr. Trabold.

5        MR. TRABOLD:  Your Honor, there is no question that

6   Mr. Smith has had a hard life.  I mean, it is obvious from

7   the presentence report, however, the hard truth of the matter

8   is, your life doesn't get any better over time if you

9   continue to victimize innocent people.  And you can't give

10  him a lower sentence in this case because he has had a hard

11  life, because the other hard truth is most of the people that

12  come before you have had a very hard life and that's part of

13  the reason that they come before you.

14       But, this case is, in my mind, calls for a sentence

15  at the higher end of the range because Mr. Smith has been

16  provided a whole lot of rehabilitative treatment that a

17  number of other people have not received, and none of the

18  treatment or none of the help has done anything to help him.

19       At some point in your life, you have to make the

20   decision that you are no longer going to victimize people and

21   you are going to try to contribute to society.

22        Mr. Smith, despite a whole lot of resources being

23   spent by their community and other communities to help him,

24   has never made that decision.  And it doesn't change the fact

25   that obviously he has had a hard life.

                                10

1        But, again, your life doesn't get any better when

2   you go into a bank and point a BB gun at people's heads and

3   essentially terrorize them.

4        So, for the impact that his conduct has had on the

5   victims in this case, as well as the fact that, prior to

6   today, he has shown very little interest in rehabilitating

7   himself, I ask that you give him a sentence at the higher end

8   of the range.

9        THE COURT:  Thank you, Mr. Trabold.

10        Well, I think both counsel on both sides of the

11   aisle here have made good points.  Certainly Mr. Smith's life

12   since infancy has been -- represented a failure of the child

13   support system that's afforded by our local and state

14   governments.

15           On the other hand, as Mr. Trabold correctly points

16   out, you can imagine, Mr. Smith, if someone were pointing a

17   gun at your fiance, she wouldn't know whether it was a BB gun

18   or the real thing.  A BB gun, in a sense, isn't the real

19   thing, of course, but it's bad from both directions and the

20   Court has to consider those things, the rehabilitation of the

21   person standing before the Court as well as the protection of

22   the community from any future criminal acts performed by that

23   person.

24           I am going to come down in the middle on this thing

25   and I hope that you will be able to take advantage of any

                                11

1   programs that the prisons have.

2           I will recommend that you be placed in McKean

3   although, as Mr. Patton probably has explained to you, the

4   Court can't order the Bureau of Prisons to do anything, we

5   can only recommend, and hopefully they will permit you to be

6   assigned to McKean.

7           We find that the applicable guideline range here is

8   eighty-four to a hundred and five months of imprisonment and

9   the criminal history category is Roman numeral V.  And this

10  calls for, as I said before, two to three years of supervised

11  release at Count 1 and three to five years at Count 2, a fine

12  in the range of $10,000.00 to $100,000.00 and a special

13  assessment of $200.00.

14          After consulting with the -- after consulting the

15  guidelines and studying the presentence report and listening

16  to arguments of counsel on both sides this morning, Michael

17  Smith is hereby committed to the custody of the Bureau of

18  Prisons to be imprisoned for a term of ninety-six months

19  imprisonment at Counts 1 and 2.

20          Upon release from imprisonment, the defendant shall

21  be placed on supervised release for a term of five years.

22  This term consists of three years at Count 1 and five years

23  at Count 2, with all such terms to run concurrently.

24          Within seventy-two hours of release from the

25  custody of the Bureau of Prisons, the defendant shall report

12

1   in person to the Probation Office in the district in which he

2   is released.

3           While on supervised release, the defendant shall

4   not commit another federal, state or local crime, shall

5   comply with the standard conditions of supervision that have

6   been recommended by the Sentencing Commission and adopted by

7   this Court and shall also comply with the following

8   additional conditions:

9           The defendant shall not possess a firearm or

10  destructive device.  The defendant shall not illegally

11  possess a controlled substance.  The defendant shall

12  participate in a program of testing and, if necessary,

13  treatment for substance abuse as directed by the Probation

14  Officer until such time as the defendant is released from the

15  program by the Probation Officer.

16          Further, the defendant shall be required to

17  contribute to the costs of services for any such treatment in

18  an amount determined by the Probation Officer, but not to

19  exceed the actual cost.  The defendant shall submit to at

20  least one drug urinalysis within fifteen days of being

21  released on supervised release and at least two periodic

22  tests thereafter.

23          The defendant shall participate in a mental health

24  treatment program as directed by the Probation Officer until

25  such time as the defendant is released from the program by

13

1   the Probation Officer.

2        The defendant shall not purchase, possess or

3   consume alcoholic beverages.  The defendant shall cooperate

4   in the collection of DNA as directed by the Probation

5   Officer.  The Court finds that the defendant does not have

6   the ability to pay a fine.  The Court will waive the fine in

7   this case due to the defendant's inability to pay.

8        It is further ordered that the defendant shall pay

9   to the United States a special assessment in the amount of

10  $200.00 which shall be paid to the U.S. District Court clerk

11  forthwith.

12       As I indicated before, we find that the sentence

13  within the guideline range, and in this case in the middle of

14  the advisory guideline range, does adequately address the

15  issues of punishment, deterrence and community safety.

16       Mr. Smith, you have a right to appeal within ten

17  days.  You are entitled to a lawyer at every stage of the

18  proceedings.  If you cannot afford an attorney, one will be

19  provided for you without charge.

20        I don't think there are any counts to be dismissed

21  here.

22        MR. TRABOLD:  Correct, Your Honor.

23        MR. PATTON:  Your Honor, two things.

24        We will object to the requirement that Mr. Smith

25  provide DNA as a condition of supervised release.  I

14

1  understand that you have ruled on those objections in the

2  past.

3        The other issue has to do --

4        THE COURT:  Excuse me.  The ruling is the same.  We

5  will overrule that objection.

6        MR. PATTON:  With regard to the special assessment,

7  while generally there is a $100.00 special assessment for

8  each count of conviction in a bank robbery, in a case where a

9  person is convicted of both unarmed bank robbery and armed

10  bank robbery, those issues merge and it should only be a one

11  $100.00 special assessment.

12        I have actually done a memorandum of law on this

13  before for Judge McLaughlin, and I apologize, I didn't bring

14   that to you.

15          THE COURT:  What did Judge McLaughlin do, agree

16   with you, with your analysis?

17          MR. PATTON:  Yes.  He did an amended judgment.  And

18   I can provide that to the Court and the U.S. Attorney's

19   Office, if you would like, if they would like a chance to

20   review --

21          THE COURT:  Does the Government have any comment on

22   it?

23          MR. TRABOLD:  I don't have any objection, Your

24   Honor.

25          THE COURT:  We'll amend the sentence that I stated

                                15

1   orally here and make it a $100.00 special assessment.

2          MR. PATTON:  Thank you, Your Honor.

3          THE COURT:  Okay.  Court is adjourned.

4   (Court recessed on Monday, August 8th, 2005, at 10:25 a.m.)

5

6

7                    * * * * *

8    I certify that the forgoing is a correct transcript

9 from the record of proceedings in the above-entitled matter.

10

11
         S\
12     Michael D. Powers
    Official Reporter
13
  *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****
14

15

16

17

18

19

20

21

22

23

24

25